United States District Court
For the Northern District of California

1

2

3

4

5

6        IN THE UNITED STATES DISTRICT COURT

7

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    JOSEPH F. GUERIN,

10              Plaintiff,                           No. C 04-03099 JSW

11       v.

12   GENENTECH, INC.,                                **ORDER GRANTING**
                                                     **DEFENDANT'S MOTION FOR**
13              Defendant.                           **SUMMARY JUDGMENT**
     _____/

14

15       Now before the Court is the motion for summary judgment filed by Defendant

16   Genentech, Inc. ("Genentech").  Having carefully considered the parties' arguments, the

17   relevant legal authority, and having had the benefit of oral argument, the Court hereby

18   GRANTS Defendant's motion for summary judgment.

19                              **BACKGROUND**

20       Plaintiff Joseph Guerin, a 55-year-old African American, was employed by NetVersant

21   which contracted with Defendant Genentech to provide telecommunications related services.

22   During his employment with NetVersant, Plaintiff was deployed as the on-site account manager

23   for the Genentech account.  After a little over one year in the position, Genentech asked to

24   terminate the customer relationship and to have NetVersant provide an alternate account

25   manager.  NetVersant subsequently terminated Plaintiff's employment.

26       Plaintiff brings suit against Genentech alleging race and age discrimination under Title

27   VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.; the Age

28   Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*.; California's Fair

1  Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, *et. seq.*; and California's

2  Unruh Civil Rights Act, Cal. Civil Code § 51, *et seq.*

3        The Court will address the additional specific facts as required in the analysis.

**ANALYSIS**

**A.    Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

28

**United States District Court**
For the Northern District of California

1    In order to make this showing, the non-moving party must "identify with reasonable

2   particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

3   1279 (9th Cir. 1996).  In addition, the party seeking to establish a genuine issue of material fact

4   must take care to adequately point a court to the evidence precluding summary judgment

5   because a court is "'not required to comb the record to find some reason to deny a motion for

6   summary judgment.'"  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th

7   Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418

8   (9th Cir. 1988)).  If the non-moving party fails to point to evidence precluding summary

9   judgment, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

10   **B.     Plaintiff's Employment Discrimination Claims Fail Because Genentech Was Not His Employer.**

11          Two or more employers may be considered "joint employers" if both employers control

12   the terms and conditions of employment of the employee.  *Swallows v. Barnes & Noble Book*

13   *Stores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997) (citing *NLRB v. Browning-Ferris Indus. of*

14   *Pa.,* 691 F.2d 1117, 1123 (3d Cir. 1982)).  In determining whether the two employing entities

15   may be considered "joint employers," the following factors have been considered: (1) the nature

16   and degree of control over the employees; (2) day-to-day supervision, including discipline; (3)

17   authority to hire and fire the employee and set conditions of employment; (4) power to control

18   pay rates or methods of payment; (5) control of the employee records, including payroll.  *See*

19   *Torres-Lopez v. May,* 111 F.3d 633, 639-640 (9th Cir. 1997); *see also Wynn v. National*

20   *Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1093-94 (2002).

21          Plaintiff has not demonstrated that Defendant Genentech had any authority to control,

22   discipline, hire or fire, pay or keep employee records for him.  NetVersant hired Plaintiff, paid

23   his wages and benefits and, ultimately, made the decision to terminate his employment.

24   (Declaration of Nicole L. Acton ("Acton Decl.") ¶¶ 5-6, Exs. K, L, J (Guerin Depo. at 70-71,

25   58-59, 74-76, 94-95, 189, 193); Ex. Y (Thompson Depo. at 41-43); Declaration of Leo Hartung

26   ("Hartung Decl.") ¶¶ 5-10, 12, Exs. A-E.)  In his opposition, without citation to the record,

27   Plaintiff asserts that Genentech had the power to hire and fire NetVersant employees,

28   extensively controlled those employees, negotiated wage rates and set employee tasks.  (Opp.

1    Br. at 7.)  Plaintiff concedes that Genentech did not have control of payroll records, but

2    contends that it "did have control of virtually everything else pertinent to the employment."

3    (*Id*.)

4          Although the record does indicate that Genentech was a part of the interviewing process

5    for choosing the NetVersant account manager for its site, there is no evidence in the record

6    submitted by either party, indicating that Genentech maintained control over NetVersant's

7    employees, including control over the hiring or firing of employees, conditions of employment,

8    rates or methods of payment, employee records or payroll.  Similarly, there is no evidence in the

9    record before the Court indicating that Genentech exercised control over the day-to-day

10   management of NetVersant's employees, with the exception of setting standards and

11   expectations for its independent consultants.  *See Moreau v. Air France*, 356 F.3d 942, 951 (9th

12   Cir. 2004) (holding that an airline's necessary oversight of work performed by contractors was

13   insufficient to convert airline to status as joint employer).  The evidence marshaled by

14   Defendant indicates that NetVersant was Plaintiff's employee and that, under the totality of the

15   circumstances, Genentech did not exercise sufficient control to create joint employer liability.[1]

16         Because Plaintiff has failed to demonstrate that Genentech acted as a joint employer, the

17   Court need not address the merits of Plaintiff's contentions that he was terminated because of

18   his race or age in violation of Title VII, the ADEA, FEHA, or the Unruh Civil Rights Act.

19

20   _____

21        [1] Given the opportunity at oral argument to present actual cites to the record
     supporting Plaintiff's contentions, counsel for Plaintiff identified a number of citations to
22   deposition testimony regarding Genentech's alleged control of Plaintiff's work.  However,
     the specific cites indicate only that Genentech employees were involved in the interview
23   process (Declaration of Richard M. Rogers ("Rogers Decl."), Ex. 2 (Jerez Depo. at 25-27);
     Ex. 3 (Thompson Depo. at 38-39); Ex. 1 (Guerin Depo. at 55, 68-70) and that Genentech
24   asked that Plaintiff be removed from the account (Ex. 5 (Hartung Depo. at 47)).  This
     evidence does not amount to the power to hire or fire Plaintiff; it merely demonstrates that
25   Genentech was involved in the process of selecting their account manager and asking that he
     be removed from the account.  The other record cites identified at oral argument indicate that
26   Genentech employees discussed company standards with Plaintiff and expected him to be
     present when the customer required services.  (Rogers Decl., Ex. 2 (Jerez Depo. at 35-37);
27   Ex. 3 (Thompson Depo. at 68-69); Ex. 5 (Hartung Depo. at 42).)  As discussed above, the
     setting of such standards does not convert the customer to the status of joint employer.  *See*
28   *Moreau*, 356 F.3d at 951.  Lastly, the citation to the record regarding setting Plaintiff's pay
     rate (Rogers Decl., Ex. 2 (Jerez Depo. at 36) indicates just the opposite; that is, that
     Genentech did not set Plaintiff's pay rate.

**United States District Court**
For the Northern District of California

1    However, for the sake of completeness, the Court finds that Plaintiff has failed on the merits to

2    make out a claim for unlawful discrimination.

3    **C.    Plaintiff's Race Discrimination Claims Do Not Survive Summary Judgment.**

4           Plaintiff brings a claim for race discrimination and contends that Genentech asked that

5    he be removed from their account because of his race.  In order to make a claim for

6    discrimination, Plaintiff must establish that he suffered an adverse employment action that was

7    motivated by intentional discriminatory animus.  *See, e.g., Guz v. Bechtel National, Inc.*, 24

8    Cal.4th 317, 353-58 (2000).

9           First, Plaintiff must establish a prima facie case of discrimination.  *See Guz,* 24 Cal.4th

10   at 351-54.  Whether Plaintiff can meet his burden to establish a prima facie case of

11   discrimination is a matter of law to be determined by the court.  *Caldwell v. Paramount Unified*

12   *School District*, 41 Cal. App. 4th 189, 201 (1995).  If Plaintiff establishes a prima facie case, the

13   burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its

14   employment decision.  Then, in order to prevail, Plaintiff must demonstrate that the employer's

15   alleged reason for the adverse employment decision was a pretext for another, discriminatory

16   motive.  *See Guz*, 24 Cal.4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

17   1054, 1061 (9th Cir. 2002).  Plaintiff may establish a prima facie case of discrimination by

18   demonstrating that (1) he belongs to a statutorily protected class; (2) he applied for and was

19   qualified for an available position; (3) he suffered an adverse employment decision despite his

20   qualifications; and (4) the position remained open or another person, typically outside of

21   Plaintiff's protected class, was hired instead.  *See, e.g., Diaz v. American Telephone &*

22   *Telegraph*, 752 F.2d 1356, 1359-1362 (9th Cir. 1985).  The only significant difference in the

23   FEHA analysis is that in order to establish a prima facie case, Plaintiff must, in addition to the

24   first three elements, demonstrate some other circumstance that suggests discriminatory motive.

25   *See, e.g., Guz*, 24 Cal.4th at 355.

26          **1.    Prima Facie Case.**

27          At summary judgment, the degree of proof necessary to establish a prima facie case is

28   "minimal and does not even need to rise to the level of a preponderance of the evidence."

**United States District Court**
For the Northern District of California

*Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)).

Plaintiff contends that his supervisor, Mr. Gromoff, "was constantly undermining [him] by reassigning [his] staff, countermanding [his] instructions, sabotaging [his] work by delaying delivery of floor plans and information, denigrating [him] to others, and barring him from meetings." (Opp. Br. at 3.)  Without citation to the record, Plaintiff maintains that a "racial motive can be inferred from the vehement hostility of Mr. Gromoff."  (*Id.*)

Because the standard for establishing a prima facie case is so minimal, the Court will assume for the sake of argument that Plaintiff has made a prima facie showing.

### 2.    Genentech Has Demonstrated Legitimate Business Reasons for Terminating Plaintiff's Assignment.

Even if Plaintiff could successfully establish a prima facie case of either race or age discrimination, the undisputed facts demonstrate that Genentech had a legitimate business reasons to terminate Plaintiff's assignment.  The undisputed record indicates that Plaintiff failed to follow directions, failed to staff his projects efficiently, and repeatedly mistreated his staff and the employees of other Genentech vendors.  (Acton Decl., Ex. S (Coffin Depo. at 38-39, 47-49); Ex. T (Gromoff Depo. at 49); Ex. R (Callison Depo. at 31-36); Declaration of George Gromoff, ¶¶ 4-10, Exs. F-H; Hartung Decl., ¶¶ 5-12, Exs. A-E.)  Failure to perform in accordance with the standards set by the customer is sufficient to constitute a legitimate business reason for termination from the assignment.  *See Hersant v. Dept. of Social Services*, 57 Cal. App. 4th 997, 1007-1010 (1997).   Plaintiff's arguments that Genentech's complaints about his performance were making a mountain of a molehill and were unsupported, pernicious, trifling and petty are unavailing.  (Opp. Br. at 8.)  The record is replete with complaints regarding Plaintiff's performance.  Defendant has met its burden of demonstrating legitimate business reasons for terminating Plaintiff's assignment.

### 3.    Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.

Because Defendant presents evidence demonstrating a legitimate nondiscriminatory reason for the termination, Plaintiff bears the burden of demonstrating that Defendant's

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   articulated reason is pretextual.  Plaintiff may do so "either [1] directly by persuading the court

2   that a discriminatory reason more likely motivated the employer or [2] indirectly by showing

3   that the employer's proffered explanation is unworthy of credence."  *Merrick v. Farmers Ins.*

4   *Group,* 892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

5           Although Plaintiff fails to identify any specific evidence in his opposition to

6   Genentech's motion for summary judgment, and it is not the district court's task to scour the

7   record in search of a genuine issue of material fact, the Court has reviewed the record submitted

8   by both parties.  *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).

9   Plaintiff apparently alleges race discrimination based on the testimony of remarks made by

10  Callison, an Operations Analyst at Genentech and overheard by Gromoff, a Senior Supervisor.

11  Plaintiff allegedly overheard Callison make a comment to Gromoff at the copy machine about

12  "some 10,000 people named George that happened to be black."  (Acton Decl., Ex. J (Guerin

13  Depo. at 114, 198-200).)  It is clear from the record that the overheard remarks were made in

14  reference to a civil rights era documentary about the history of African Americans in the United

15  States.  (Acton Decl., Ex. AA (Jerez Depo. at 89-90).)

16          First, because of the context in which the remarks by Callison were made, there is no

17  evidence of racial animus.  Second, because neither Callison nor Gromoff were the

18  decisionmakers involved in the decision to terminate the customer representative relationship,

19  their remarks are inadequate to demonstrate racial animus.  "[S]tatements by

20  nondecisionmakers, nor statements by decisionmakers unrelated to the decisional process itself,

21  [cannot alone] suffice to satisfy the plaintiff's burden in this regard."  *McGinest v. GTE Service*

22  *Corp.*, 360 F.3d 1103, 1138 (9th Cir. 2004)*, citing Price Waterhouse v. Hopkins,* 490 U.S. 228,

23  277 (1989) (O'Connor, J., concurring).  Lastly, the comment is too isolated and vague to

24  establish discriminatory bias.  Ambiguous stray remarks cannot establish pretext.  *See Mondero*

25  *v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (holding that stray remarks not acted

26  upon or communicated to a decision maker are insufficient to establish pretext); *see also*

27  *Merrick*, 892 F.2d at 1438 (same).  A single stray remark, without other substantial evidence, is

28

1    insufficient to withstand summary judgment.  *See Mangold v. California Public Utilities*

2    *Commission*, 67 F.3d 1470, 1477 (9th Cir. 1995).

3         Beside the unsupported allegation that "racial motive can be inferred from the vehement

4    hostility of Mr. Gromoff" based on the complaints regarding Plaintiff's performance, Plaintiff

5    fails to set forth any direct evidence to persuade the court that a discriminatory reason more

6    likely motivated the employer or any indirect evidence tending to demonstrate that the

7    employer's proffered explanation is unworthy of credence.  *See Merrick,* 892 F.2d at 1437.

8    Therefore, the Court grants summary judgment on Plaintiff's allegations of discrimination

9    based on race.

10         **D.    Plaintiff's Age Discrimination Claims Do Not Survive Summary Judgment.**

11         Plaintiff also brings a claim for age discrimination and contends that Genentech asked

12   that he be removed from their account because of his age.  The ADEA makes it "unlawful for

13   an employer ... to fail or refuse to hire or to discharge any individual [who is at least 40 years of

14   age] ... because of such individual's age."  *Id.* at §§ 623(a), 631(a).  To succeed on his claim,

15   Plaintiff must demonstrate that age actually motivated Defendant's decision to terminate him.

16   *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).

17         Plaintiff again bears the initial burden of establishing a prima facie case of

18   discrimination.  If he establishes a prima facie case, the burden then shifts to the defendant to

19   articulate a legitimate nondiscriminatory reason for its employment decision.  Then, in order to

20   prevail, Plaintiff must demonstrate that Defendant's alleged reason for the adverse employment

21   decision is a pretext for another motive which is discriminatory.  *See Schnidrig v. Columbia*

22   *Machine, Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (citation omitted).  Guerin may establish a

23   prima facie case either by direct evidence of discriminatory intent or by circumstantial evidence

24   demonstrating he was "(1) a member of the protected class (age 40-70); (2) performing his job

25   in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee

26   with equal or inferior qualifications."  *See Schnidrig*, 80 F.3d at 1410; *see also Nidds v.*

27   *Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1997).

28

United States District Court

For the Northern District of California

1.      **Prima Facie Case and Legitimate, Nondiscriminatory Reason for Termination.**

Plaintiff asserts that Genentech discriminated against him because of his age based upon a single remark by Gromoff to Ms. Thompson, a senior manager, to the effect that Plaintiff may have tended to forget things because of his age and the general corporate culture of the workplace.  Again, assuming Plaintiff has made out a prima facie case of age discrimination, Genentech has identified legitimate business reasons for terminating the customer relationship with him.  Again, failure to perform in accordance with the standards set by the customer is sufficient to constitute a legitimate, nondiscriminatory business reason for termination from the assignment. *See Hersant*, 57 Cal. App. 4th at 1007-1010.

The burden then shifts to Plaintiff to demonstrate that the reason for the adverse employment decision was a pretext for another, discriminatory motive.

2.      **Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.**

To demonstrate pretext, Plaintiff relies on a statement made by Gromoff regarding Plaintiff's alleged loss of memory due to his age.  (Rogers Decl., Ex. 3 (Williams Depo. at 47).) Plaintiff admits that the comment about his age was an isolated instance.  (Acton Decl., Ex. J (Guerin Depo. at 113-14).)  The Ninth Circuit has held that similar kinds of statements were merely "stray" remarks and, thus, were insufficient to create a genuine issue of fact regarding age discrimination.  *See Merrick*, 892 at 1438-39 (holding that hiring supervisor's statement that he hired a younger employee over plaintiff because he was "bright, intelligent, knowledgeable young man" was a stray remark insufficient to create an inference of age discrimination); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284-85 (9th Cir. 2000) (holding that employer's statement that plaintiff was not "young and promotable" did not give rise to suspicions of age discrimination); *Nesbit v. Pepisco*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that employer's statement that "[w]e don't necessarily like grey hair" did not support inference of discriminatory motive).  Gromoff's alleged statement, an isolated instance and a vague remark, does not create an inference of age discrimination.  Accordingly, this evidence is insufficient to create a genuine issue of fact regarding pretext.

United States District Court

For the Northern District of California

1  Plaintiff also contends that the corporate culture at Genentech was somehow youthful,

2  by asserting that supervisors wore younger-looking clothes and encouraged a youthful

3  environment by sponsoring musical acts such as Stevie Wonder and Earth, Wind and Fire to

4  play on campus.  (Acton Decl., Ex. J (Guerin Depo. at 109-112).)  Evidence of a supervisor's

5  fashion or musical preferences is of no probative value whatsoever and does not create a

6  genuine issue of fact tending to demonstrate that demonstrate that Defendant's alleged reason

7  for the adverse employment decision is a pretext for another, discriminatory motive.  *See*

8  *Schnidrig*, 80 F.3d at 1409.

9  **E.     The Unruh Act Claim Fails as a Matter of Law.**

10  Plaintiff also brings claims for race and age discrimination under California's Unruh

11  Civil Rights Act.  Cal. Civ. Code § 51, *et seq*.  The Unruh Act provides:

12  > All persons within the jurisdiction of this state are free and equal, and no matter what
   > their sex, race, color, religion, ancestry, national origin, . . . are entitled to the full and
13  > equal accommodations, advantages, facilities, privileges, or services in all business
   > establishments of every kind whatsoever.

14  Cal. Civ. Code § 51.  The Unruh Act prohibits discrimination "by a 'business establishment' in

15  the course of furnishing goods, services or facilities to its clients, patrons or customers."  *Alcorn*

16  *v. Anbro Eng'g, Inc*., 2 Cal.3d 493, 500 (1970).  The Unruh Act does not, however, apply to

17  allegations of discrimination in employment.  *Id*.; *see also Rojo v. Kliger*, 52 Cal.3d 65, 77

18  (1990) (holding that the Unruh Act has no application to employment discrimination).  "It is

19  reasonably plain from *Rojo, Alcorn* and other cases on the subject that 'employment

20  discrimination' claims not covered by the Unruh Act are confined to claims by an employee

21  against his employer, or against an entity in the position of the employer."  *Alch v. Superior*

22  *Court*, 122 Cal. App. 4th 339, 392-93 (2004).  The Unruh Act only applies to business

23  establishments in the context of the supply of services or facilities to clients, patrons, or

24  customers, not when the establishment serves in the position of the employer.  The gravamen of

25  Plaintiff's complaint is discrimination in employment, not the supply of services.  Therefore,

26  the Unruh Act is inapplicable.  Furthermore, even if applicable, summary judgment is proper on

27  Plaintiff's Unruh Act claims as, based on the foregoing analysis, Plaintiff is unable to establish

28  intentional discrimination on the basis of age or race.  *See Harris v. Capital Growth Investors*

United States District Court
For the Northern District of California

*XIV*, 52 Cal.3d 1142, 1175 (1991) (holding that a plaintiff seeking to establish a case under the

Unruh Act must plead and prove intentional discrimination in public accommodations in

violation of the terms of the Act).

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's motion for summary

judgment.  Judgment shall be entered against Plaintiff and in favor of Defendant.


**IT IS SO ORDERED.**


Dated:    October 24, 2005

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

11